THOMPSON *v.* BONHOMIE & HATTIESBURG SOUTHERN R. R. Co.

No. 39636          April 25, 1955          79 So. 2d 533

W. *Arlington Jones, Karl Kepper*, Hattiesburg, for appellant.

*Hannah, Simrall & Aultman, Currie & Currie*, Hattiesburg, for appellee.

ROBERDS, P. J.

Thompson, the appellant, brought this suit against Chrysler Sales Corporation of Detroit, Michigan, and Bonhomie & Hattiesburg Southern Railroad Company, to recover damages for personal injuries received by him when an automobile fell from a rack, or ramp, as the automobile was being unloaded from a railroad freight car September 17, 1952, in the railroad yards at Hattiesburg, Mississippi. The consignee was Joe Morris Motor Company.

The declaration charged some six grounds of negligence on the part of Chrysler, directed, in the main, to alleged unsuitable appliances used in transporting the automobile, and defective method of attachment of the automobile to such appliances, and to the railroad car. When Thompson rested his case he voluntarily dismissed his suit against Chrysler. That left only the Railroad as a defendant to the action.

The negligence charged against the Railroad, as we gather from the declaration, consisted in its (1) failure to properly inspect the inside of the freight car when it was delivered to the Railroad by the Gulf, Mobile & Ohio Railroad at Beaumont, Mississippi, and thereby detect the unsafe method of loading of the automobiles by Chrysler, and, having detected such unsafe condition, (2) its failure to remedy that condition, and (3) that knowing, or being under duty to know, that it would be dangerous to unload the automobiles from the railroad

car, using the services of Thompson for that purpose, during which time the automobile fell from the rack and injured Thompson. The declaration particularly charged that the dangerous condition consisted in this: Four automobiles had been placed in the freight car. Two of them, back to back, rested upon the bottom of the rack on the floor of the freight car. The front ends of these two automobiles were chained to the floor of the freight car. In the course of transportation some three or four of the floor planks, to which the chain had been fastened, had torn loose under one of said two automobiles, permitting that automobile to move forward and backward. It was charged that this condition rendered the car an unsafe place in which to work in unloading the automobiles, causing the injury to Thompson.

The trial judge submitted to the jury for its determination the issues (a) whether the car was unsafe for loading and whether the Railroad knew, or should have known, that, and (b) whether Thompson was assisting in unloading the car under the supervision of appellee Railroad, and (c) whether Thompson received his injuries as a result of negligence of the Railroad.

The jury found for appellee Railroad, and Thompson appealed.

These are the essential facts developed by the testimony, that of Thompson himself and his witnesses, as well as the witnesses for appellee Railroad:

The boxcar was sealed when it was delivered to appellee Railroad at Beaumont. A proper outside inspection was made of it by appellee Railroad. That inspection disclosed no defect in the car or damage to the cargo. No damage resulted to the car or its contents in transportation from Beaumont to Hattiesburg. Appellee Railroad on September 16, 1952, notified Morris of the arrival of the car. Four employees and servants of Morris Motor Company came to unload the automobiles. Mr. James B. Isabell was in charge. He was the service manager of Morris Motor Company. He had super-

vised the unloading of automobiles for some fifteen years. He brought from Morris Motor Company all tools and appliances needed for the unloading of the automobiles. He testified he was in complete charge of this unloading job. We will now endeavor to describe the manner in which the automobiles were loaded and how the accident happened.

Two of the automobiles rested upon the part of the automobile rack which was lying on the floor of the freight car. They were fastened to that floor by chains attached to the front and rear of the two automobiles to prevent the automobiles moving forward or backward. The two automobiles were placed back to back. As above stated, some three or four planks had been torn loose under the front of one of the automobiles where a chain was, or had been, attached to the floor. That automobile had moved to some extent in transit and had some scratches on it. Isabell notified appellee Railroad of that and one of its agents came and made a notation of the nature and extent of the damage. The other floor-automobile was properly in place. The chain was properly attached to the floor and the automobile had been held stationary. Each of the other two automobiles had been placed upon and attached to steel racks, or ramps. These racks were in a slanting upright position, about fifty degree vertical, the fronts of the automobiles extending upward. Each rack was supported by two steel standards extending from the lowest part of the rack, which was on the floor of the freight car, to the appropriate places underneath the racks above. Each elevated automobile had what is called a chainhoist. These hoists were used for the purpose of raising and lowering the racks in loading and unloading the automobiles thereon. They were located at each end of the rack-ramp appliance and could be pulled and manipulated by one standing on the railroad car floor. They extended up to far corners of the rack, ran over or across some enclosed roller or revolving machinery part, one

to the right and the other to the left, and were attached to the racks on which the automobiles were resting. By applying the necessary pull to these chains, the racks with the automobiles thereon could be raised or lowered.

Isabell and his men removed from the railroad car the two floor-automobiles. The loose plank underneath one of them presented no unusual problem or danger, and had nothing to do with the injury. They also lowered one of the racks and removed the automobile therefrom. That left one automobile on the other rack. They proceeded to pull the chain to lower that rack but the chain would not move or function. It appeared to be caught or stuck. Isabell sent for a piece of timber. A four by four was brought. This was so placed under or about the enclosed part through which the chain passed as, in the judgment of Isabell, would lighten the tension and loosen the chain when the timber was properly jacked up. A jack was brought and this method applied in aid of loosening the chain.

Appellant Thompson was manipulating the jack. The chain did suddenly work, or come loose, dropping the automobile to the floor, striking Thompson and injuring a leg.

As stated, liability of the Railroad was submitted to a jury. It returned a verdict for the Railroad.

The Railroad was under no duty to tear loose the seal on the car at Beaumont and examine the contents thereof or the inside condition of the car. The Rules and Regulations of the American Association of Railroads, developed by the proof herein, read ''It is not intended that closed cars be open at interchange point for interior inspection of load unless the car shows external evidence of damage or unless there is reason to believe that the car had not been loaded in accordance with the above rules.'' This car showed no external evidence of damage and the Railroad had no reason to believe the car had not been loaded in accordance with the rules. Besides, as will be shown hereinafter, the loose floor planks,

the only faulty condition inside the car, had no causal connection whatever with the injury.

No damage resulted to the railroad car or its contents in the course of transportation from Beaumont to Hattiesburg.

■ ■ The Railroad had nothing to do with this unloading job. It was done entirely by employees of Morris Motor Company. The presence of the Railroad agent at the scene of unloading, for such time as he was there, was for the purpose of noting the nature and extent of the damage to the automobile resulting from the loose floor planks. Isabell, service manager of Morris Motor Company, had entire charge and control of the manner and method of unloading the automobiles and of those engaged in that work. Isabell, and those assisting him, were all employees of Morris Motor Company. All tools and equipment used in and about the work belonged to Morris.

Whether there was a defect in the chain-hoist, or whether the chain was temporarily caught, or just what the trouble was in that respect, is uncertain. However, it is shown that this was a suitable and usual appliance for raising and lowering the racks and the automobiles thereon. Isabell testified he examined with a flashlight the chain-hoist, including the part he thought had caused the trouble, and he could detect nothing wrong with it. In any event appellee Railroad had nothing to do with it.

■ ■ It will be seen that there was no causal connection whatever between the loose floor planks and this accident. No injury resulted from the loose planks. Indeed, the loose-plank condition was in one end of the freight car and the chain-hoist trouble occurred in the opposite end thereof.

We see no liability on the Railroad. The verdict of the jury was amply justified.

Affirmed.

*Hall, Lee, Kyle* and *Holmes, JJ.,* concur.